Argued 4 October, decided 12 December, 1904; rehearing denied 15 May, 1905.

## SCOTT *v.* FORD.

[78 Pac. 742, 80 Pac. 899, 68 L. R. A. 469.]

RECOVERING MONEY PAID UNDER MISTAKE OF LAW OR ERROR OF FACT.

1. Money paid under a mistake of law, with knowledge of all the facts, no deceit or undue importunity intervening, cannot be recovered; but if paid under an error of fact, not arising from the intentional neglect of the party to inquire, even if accompanied by a mistake as to the law or ignorance of it, a recovery may be had.

IDEM. — In an action to recover money paid by executors to one whom they supposed entitled to receive it under the will, a finding that the money was paid to defendant under the belief that she was entitled to it as a child of her deceased father under the will, does not sustain a judgment of recovery, as it discloses only a mistake of law unaffected by any act of the defendant.

IDEM. — In such a case a finding that the evidence does not show whether plaintiffs had any belief or knowledge as to whether defendant's father was alive at the time the will was executed or at the time of testator's death, does not support a judgment for plaintiff on the ground of an error of fact, for it does not show that the plaintiffs were mistaken as to the truth.

FINDINGS BY SUPREME COURT IN LAW ACTIONS.

4. Where different inferences may be drawn from the evidence, the supreme court cannot make findings of fact on appeal in a law action, nor substitute one finding for another.

ASSIGNING ERROR AS TO RULING ON MOTION.

5. Error is not assignable on the ruling of the court on a motion for judgment dismissing an action based on the pleadings, evidence, and stipulations of fact.

RECOVERING MONEY PAID UNDER MISTAKE OF FACT.

6. Money honestly paid in ignorance or forgetfulness of the facts, or under a clearly proven, genuine mistake as to the truth, may be recovered.

RIGHT OF SUPREME COURT TO ENTER JUDGMENT ON FINDINGS.

7. Where the findings of fact by the trial court in a law action will not support a judgment for either party, the only course left for the supreme court is to send the case back.

APPEAL — MAKING FINDINGS ON CONFLICTING EVIDENCE.

8. Where the evidence in the record on appeal in a law action is such that different inferences and deductions may reasonably be drawn therefrom, the supreme court cannot revise the findings or make new ones.

CONSTRUCTION OF CONFUSED CONCLUSION.

9. A conclusion of law that "the sum so paid to defendant as a legatee under the will * * was erroneously paid," is a conclusion of law and not a finding of fact.

From Lane : JAMES W. HAMILTON, Judge.

Action by George W. Scott and H. A. Hammond, as executors of the last will and testament and estate of Church Sturtevant, deceased, against Eva Ford, formerly Eva Stephens.

The complaint herein is, in substance, as follows: That on December 30, 1888, Church Sturtevant made his will; that on December 18, 1894, he made a codicil thereto, reciting that by said will he had bequeathed to his daughter, Mrs. Stephens, a certain share of his estate, and that, she now being dead, he therefore bequeathed to her five children equally the share set apart to her in the will; that at the time of the execution of said codicil, Mrs. Stephens, whose given name was Mary Jane, was dead, and left surviving her five children, and no more; that Church Sturtevant subsequently died; that said will and codicil were duly admitted to probate in the county and probate court for Henry County, State of Illinois, and that plaintiffs were appointed executors; that the defendant, Eva Ford, is a grandchild of Mary Jane Stephens, being the daughter of Hosea Stephens, her son; that Hosea died in Lane County, Oregon, long prior to the death of Mary Jane, and prior to the time of the execution of the codicil; that at the time of their appointment and qualification as executors, and while plaintiffs were so acting, and at the times and dates that the money was paid to and received by defendant and her guardian, as hereinafter alleged, plaintiffs were informed and believed that said Hosea Stephens was one of the legatees named in said codicil, and was entitled to receive the legacy named in said codicil at the time of his death; that said Hosea was alive at the time said codicil and will were executed and at the time of the death of the testator, and that said Eva Ford, then Eva Stephens, was then entitled to receive the said money paid to her as daughter and heir of said Hosea; that plaintiffs did not know at the time that said money was paid that said Hosea Stephens was not living at the time said codicil and will were executed, and did not know that he was not living at the time of the death of the testator, and did not ascertain the fact that he was not

named and referred to in said will and codicil as one of the legatees therein, and that he was not entitled to receive said legacy mentioned therein, and that the defendant was not entitled to receive the same until after said money was paid; that on and prior to the 1st day of January, 1900, plaintiffs were informed and believed that defendant was entitled to receive an equal one sixth of the bequest mentioned in the codicil; that plaintiffs paid to defendant, through her guardian, $600 on March 31, 1900, $600 on September 5, 1900, and to the defendant in person $600 on March 27, 1901; that the said information and belief of said executors as to defendant's being entitled to any portion of said bequest was and is erroneous, and that the money was paid to her through their mistake. Other formal allegations follow, with a prayer for the recovery of the amount so paid to defendant, with interest and costs.

The answer admits the allegations touching the execution of the will and codicil, their admission to probate, the appointment of plaintiffs as executors, the death of Mrs. Stephens at the time of the execution of the codicil, the subsequent death of Church Sturtevant; that Eva Ford is the grandchild of Mrs. Stephens, being the daughter of Hosea Stephens, her son; that Hosea died long prior to the death of Mrs. Stephens, and prior to the execution of the codicil and the payment of the money to Eva and her guardian; but specifically denies all else.

Under these issues a trial was had before the court, a jury being waived, resulting in findings of fact and law as follows, omitting the first finding, which relates to the payment of the money by plaintiffs to defendant, which is admitted:

*Second.* "That the said payments were so made by plaintiffs to defendant under the belief that as a child of one Hosea Stephens said defendant would be entitled to said

sums of money under and by the terms and provisions of the codicil to the will of Church Sturtevant, which terms are set forth in the amended complaint of plaintiff.

*Third.* "That the Mary Jane Stephens referred to in the codicil of said will of Church Sturtevant as Mrs. Stephens died April 23, 1893.

*Fourth.* "That the children of the said Mary Jane Stephens living at the time of her death, and at the time of making the codicil to the will of Church Sturtevant, and at the time of the death of Church Sturtevant, are Lucy Stephens, Clark Stephens, Church Stephens, Joseph Stephens, and Lettie McCutcheon.

*Fifth.* "That Hosea A. Stephens was a child of said Mary J. Stephens; that Hosea died December 13, 1882, leaving surviving him a daughter, who is the defendant herein.

*Sixth.* "That it does not appear from the evidence that plaintiffs, or either of them, had any belief or knowledge as to whether the said Hosea was living at the time of the execution of said codicil to said will; nor that plaintiffs, or either of them, believed that said Hosea was living at the time of the death of said Church Sturtevant, the testator in said will."

As conclusions of law, based on the foregoing findings of fact, I find as follows:

*First.* "The sum of eighteen hundred dollars so paid by plaintiffs to defendant as a legatee under the will hereinbefore referred to was erroneously paid to defendant.

*Second.* "That by the terms of the said codicil of said will defendant was not entitled to said sum of money so paid her, nor any part thereof.

*Third.* "That the withholding said moneys from plaintiffs by defendant is wrongful.

*Fourth.* "That plaintiffs are entitled to recover a judgment against the defendant for the sum of eighteen hundred dollars, with interest thereon from April 5, 1902, at the rate of six per cent per annum, amounting to ($1,995.90), and plaintiff's costs herein incurred."

Based upon these findings, a judgment was rendered for plaintiffs, from which the defendant appeals.

                                                  REVERSED.

For appellant there was a brief over the names of *Tilmon Ford*, *William M. Kaiser*, and *Woodson T. Slater*, with an oral argument by *Mr. Ford* and *Mr. Slater*.

For respondent there was a brief and an oral argument by *Mr. L. Bilyeu* and *Mr. A. C. Woodcock*.

MR. JUSTICE WOLVERTON delivered the opinion.

Plaintiffs base their action upon the principle that when one pays money which he is neither morally nor legally bound to pay, under a mistake as to his legal obligations and duty, and which the recipient has no right in good conscience to retain, the former may recover it back in an action of *indebitatus assumpsit*, whether his mistake be one of law or of fact. The trial court must have sustained this principle as sound, else its conclusion of law could not follow from the facts found. The defendant contends that the true principle is that money paid with knowledge ·of the facts, without fraud or deceit, under a mistake of law, cannot be recovered back, which principle she insists is.alone applicable in determining the controversy.

1. The question involved is an ancient one, and has provoked much disputation, but the trend of modern authority is strongly in one direction, favorable to the theory that a mistake of law, within proper limitations, does not excuse, and that money paid under such mistake cannot be recovered back. There are two legal maxims involved in the inquiry, namely, *Ignorantia facti excusat, ignorantia juris non excusat* (Ignorance of fact excuses, ignorance of the law does not excuse); and *Volenti non fit injuria* (that to which a person assents is not esteemed in law an injury): Broom, Legal Maxims (8 ed.), *253, 268. As to the latter Mr. Broom says (*272): " There is also a

large class of cases in which it has been held that money paid voluntarily cannot be recovered, although the original payment was not required by any equitable consideration; and these cases are very nearly allied in principle to those which have been considered in treating of a payment made in ignorance of the law." We will therefore turn our attention more directly to the common understanding in legal thought of the former maxim.

It is axiomatic, also, that "every man is presumed to know the law," and of this "ignorance of the law does not excuse" is but a sequence. From these, coupled with that as to ignorance of fact, Mr. Broom derives the two following propositions: "*First*, that money paid with full knowledge of the facts, but through ignorance of the law, is not recoverable, if there be nothing unconscientious in the retaining of it; and, *secondly*, that money paid in ignorance of the facts is recoverable, provided there have been no laches in the party paying it, and there was no ground to claim it in conscience." The qualification of the principle involved by the first deduction, namely, "if there be nothing unconscientious in retaining it," is traceable to dicta of Lord Chief Justice De Grey in *Farmer* v. *Arundel*, 2 W. Bl. *824, and Lord Mansfield in *Bize* v. *Dickason*, 1 D. & E. 285. This has been shown by elaborate and well-considered cases, both in England and this country. The observation of Lord Chief Justice De Grey was that, "When money is paid by one man to another as a mistake either of fact or of law, or by deceit, an action will certainly lie to recover it back." This is a positive affirmation, stripped of any qualification as to conscience, that money, though paid under mistake of law, may be recovered back. But it is said that in the case wherein the announcement was made the action was not sustained, although the money had been paid by the plaintiffs under a clear mistake of law. Lord Mansfield's proposition was that, "Where

money is paid under a mistake, which there was no ground to claim in conscience, the party may recover it back again by this kind of action" (*assumpsit.*) We are left in doubt as to whether the great jurist meant mistake of law or of fact. Mr. Justice Gibbs, who wrote the prevailing opinion in *Brisbane* v. *Dacres*, 5 Taunt. 144, infers with convincing force, from circumstances attending the utterance and others occurring later, that he meant the latter. See *Clarke* v. *Dutcher*, 9 Cow. 674, where this view was subsequently. maintained.

*Brisbane* v. *Dacres*, 5 Taunt. 144, is one among the first cases bearing upon the question, and is most elaborately and learnedly considered. The case was this : The captain of a king's ship brought public treasure home in her, upon the public service, and treasure of individuals, for his own emolument. He received freight for both, and paid over one third of it, according to established usage in the navy, to the admiral under whose command he had sailed. Discovering, however, that the law did not compel captains to pay to admirals one third of the freight, he brought an action as for money had and received to recover it back from the admiral's executrix, and it was held that as to the public freight he could not recover the money back. Mr. Justice Gibbs, after stating the facts, makes use of this significant and unmistakable language : " We must take this payment to have been made under a demand of right, and I think that where a man demands money of another as a matter of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid a sum, he never can recover back the sum he has so voluntarily paid. It may be that upon a further review he may form a different opinion of the law, and it may be his subsequent opinion may be the correct one. If we were to hold otherwise, I think many inconveniences may arise. There are many doubtful questions of law. When they arise the

defendant has an option either to litigate the question, or to submit to the demand, and pay the money. I think that by submitting to the demand he that pays the money gives it to the person to whom he pays it, and makes it his, and closes the transaction between them. He who receives it has a right to consider it as his without dispute. He spends it in confidence that it is his; and it would be most mischievous and unjust if he who has acquiesced in the right by such voluntary payment should be at liberty, at any time within the statute of limitations, to rip up the matter, and recover back the money. He who received it is not in the same condition. He has spent it in the confidence it was his, and perhaps has no means of repayment." Here are brought to the service of the jurist both of the legal maxims first above alluded to, which seem to suggest a sound conclusion. Then he discusses the dicta of Lord Chief Justice De Grey and Lord Mansfield, and, as if not to have his meaning misunderstood, reiterates : "I am therefore of the opinion this money cannot be recovered back. I think, on principle, that money which is paid to a man who claims it as his right, with a knowledge of all the facts, cannot be recovered back. I think it on principle, and I think the weight of the authorities is so, and I think the dicta that go beyond it are not supported or called for by the facts of the cases."

Chambre, J., rendered a dissenting opinion, wherein he held that the money was not recoverable upon the ground that it was against conscience for the admiral's executrix to retain it. He says: "It seems to me a most dangerous doctrine that a man getting possession of money, to any extent, in consequence of another party's ignorance of the law, cannot be called on to repay it. Suppose an administrator pays money per capita in misapplication of the effects of the intestate, shall it be said that he cannot recover it back? It is said that may be remedied in equity.

This is an equitable action, and it would be of bad effect if it should not prevail in like cases." Lord MANSFIELD took part in this case also, concurring in the main opinion, and, to show the bent of his mind, after discussing other cases, he says: "The last case is *Bilbie* v. *Lumley*, 2 East, 469. Certainly it was not argued, but it is a most positive decision; and the counsel was certainly a most experienced advocate, and not disposed to abandon tenable points. My brother CHAMBRE put the case of an administrator paying away the assets in an undue course of administration. I know not that he could recover back money so paid. Certainly, if he could, it could be only under the principle *æquum et bonum*. There being, therefore, no case which has been argued by counsel wherein the distinction has been taken and in which this doctrine has been held, and as we do not feel ourselves called upon to overrule so express an authority as *Bilbie* v. *Lumley*, I am of the opinion that the defendant is entitled to retain this money." We have gone thus lengthily into this case to show the foundation for the general doctrine that money paid under a claim of right, with full knowledge of all the facts, but under a mistake or ignorance of law, cannot be recovered back, and to denote the questionable character of the foundation of the opposing doctrine, and we cite the discussions of Mr. Justice CHAMBRE and Lord MANSFIELD to indicate how uncertain, indefinite, and equivocal is the test whether, in the abstract, it be against conscience or not for the party receiving the money to retain it. CHAMBRE put a case much like the present, but thought the question of conscience would govern in determining the right to recover. Lord MANSFIELD doubted it, and they were directly opposed to each other as to the rule applicable to the facts of that case. A headnote to this case would seem to support Mr. Broom's deduction, but it does not state correctly the principle decided.

The earlier cases upholding the doctrine to which reference is made as authority are *Bilbie* v. *Lumleg*, 2 East, *469, and *Lowry* v. *Bourdien*, 2 Doug. 468. In this country there are three leading cases, adopting and promulgating the view of Mr. Justice CHAMBRE in *Brisbane* v. *Dacres*. The first in point of time is *Lawrence* v. *Beaubien*, 2 Bailey (S. C.), 623 (23 Am. Dec. 155), which was an action upon a bond given by defendant, an unnaturalized citizen, as a consideration for a deed conveying certain real property in trust for himself, which had previously been devised to him, he having been illy advised that the law would not permit him to hold real property, being an alien, and it was held, in effect, that relief will be granted against a mistake of law, and a contract made under such mistake, though with full knowledge of the facts, be set aside in cases where neither party has acquired a right or suffered a loss by such contract. A distinction is drawn between ignorance of the law and mistake of law, but the decision is put upon the alternative of adopting the doctrine of *Bilbie* v. *Lumley* and *Brisbane* v. *Dacres*, or, on the other hand, that maintained by *Lansdown* v. *Lansdown*, Mosely, 364 (an authority very much discredited by Lord MANSFIELD), *Bingham* v. *Bingham*, 1 Ves. Sr. 126, and the dicta in *Farmer* v. *Arundel* and *Bize* v. *Dickason* ; and it was determined against the principle as embodied in the maxim that ignorance of the law does not excuse. It should be remarked that it was not a decision announcing an exception to the general rule, but laying down a principle distinct and antagonistic thereto. The next case is *Culbreath* v. *Culbreath*, 7 Ga. 64 (50 Am. Dec. 375). The facts are that one Culbreath died, leaving neither widow nor children. His nearest of kin were seven surviving brothers and sisters and the children of a deceased sister. The administrator, under a misapprehension of the law, divided the estate equally between the seven brothers and sisters, to the ex-

clusion of the children of the deceased sister. The children having subsequently recovered against the administrator to the extent of one eighth of the estate, the latter sued two of the distributees to recover back the amount paid to them. The court held that "money paid by mistake of the law may be recovered back in an action for money had and received where there is a full knowledge of all the facts, provided that the mistake is clearly proven; and the defendant cannot, in good conscience, retain it." The result was again reached by a review of the cases, where it was found that there was a parting of the ways as it respects that doctrine and that held to in *Bilbie* v. *Lumley.* The next case is *Northrop's Ex'rs* v. *Graves*, 19 Conn. 548 (50 Am. Dec. 264), very similar on the facts to the one at bar, wherein it was said that "When money is paid by one under a mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back in an action of *indebitatus assumpsit,* whether such mistake be one of fact or of law." The court bases the right of action upon the principle stated by Lord Mansfield in *Moses* v. *Macferlan,* 2 Burr. 1005, that the action of *indebitatus assumpsit* lies for the recovery of money which *ex æquo et bono* ought to be paid over to the plaintiff. The action is said to be equitable in its nature, and, of course, comprises cases where the defendant cannot in good conscience retain the the advantage he has obtained. With the principle there can be no quarrel, and the action set forth is brought every day, having nothing further upon which to found it; but the case under discussion took the broad distinction indicated by the earlier authorities, and it came again to the test as to which was the sounder rule, not that there was an exception to the general rule. Kentucky is in line with these cases: *Fitzgerald* v. *Peck*, 4 Litt. (Ky.) 125.

The leading case in this county upon the other side of the controversy is, perhaps, *Clarke* v. *Dutcher*, 9 Cow. 674 ; the court, speaking through Mr. Justice SUTHERLAND, saying that "Although there are a few dicta of eminent judges to the contrary, I consider the current and weight of authorities as clearly establishing the position that where money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay it, when in truth he was not. (1) He shall not be permitted to allege his ignorance of law; (2) and it shall be considered a voluntary payment." Another case is *Mowatt* v. *Wright*, 1 Wend. 355 (19 Am. Dec. 508), where it is said : "The action for money had and received, in general, lies for money which, *ex æquo et bono*, the defendant ought to refund as for money paid by mistake, or upon a consideration which happens to fail, or for money obtained by imposition, or extortion, or oppression, or by taking an undue advantage of the plaintiff's situation : 2 Burr. 1012. A mistake which entitles a party to sustain this action must be a mistake of fact. Where there is no fraud nor mistake in matter of fact, if the law was mistaken, the rule applies that *ignorantia juris non excusat:* Doug. 471. An error of fact takes place either when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist." A later case is *Champlin* v. *Laytin*, 18 Wend. 407 (31 Am. Dec. 382), where it is held that mere mistake in law is not, in the absence of fraud, surprise, or undue influence, sufficient for relief in equity. In the course of an opinion by Mr. Justice BRONSON he affirms that "The civilians are divided on the question whether money paid under a mistake of law is liable to repetition. But it is the settled doctrine of Westminister Hall that money paid with a full knowl-

edge of the facts cannot be recovered back on the ground that the party was ignorant of the law." *Hurd* v. *Hall*, 12 Wis. 125, is a well-considered case by Mr. Chief Justice DIXON, wherein he defines a mistake of law thus: "A mistake of law happens when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion of inference, arising from an imperfect or incorrect exercise of the judgment, upon facts as they really are; and, like a correct opinion, which is law, necessarily presupposes that the person forming it is in full possession of them." See, also, *Birkhauser* v. *Schmitt*, 45 Wis. 316 (30 Am. Rep. 740). But he sets forth another condition that does excuse, namely, an error of fact, and defines it also, stating the appropriate limitations to be observed as follows: "An error of fact — *ignorantia facti* — is ordinarily said to take place either when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist. * * This ignorance of facts must be excusable; that is, it must not arise from the intentional neglect of the party to investigate them. The rule which formerly prevailed that if a party might, by the exercise of reasonable diligence, have ascertained the facts, he would not, on the ground of ignorance or mistake, be relieved from his contract, has of late been very much relaxed. The latter cases establish the doctrine that, wherever there is a clear *bona fide* mistake, ignorance, or forgetfulness of facts, the contract may, on that account, be avoided."

The general principle was early adopted by this court in *Johnson* v. *McCown*, 1 Or. 193. Many cases announce and apply it, and, indeed, it would seem that all the later cases are in unison touching the subject. We cite a few of them only: *Jefferson County* v. *Hawkins*, 23 Fla. 223 (2 South. 362); *Brewton* v. *Smith*, 28 Ga. 442; *White* v. *Rowland*, 67 Ga. 546 (44 Am. Rep. 731); *Egbert* v. *Rush*,

7 Ind. 706; *Erkens* v. *Nicolin*, 39 Minn. 461 (40 N. W. 567); *Peters* v. *Florence*, 38 Pa. 194; *Evans* v. *Hughes County*, 3 S. D. 244 (52 N. W. 1062); *Shriver* v. *Garrison*, 30 W. Va. 456 (4 S. E. 660). The Indiana case is of marked analogy to the one at bar on the facts, and has later had the tacit approval of the same court: *Stokes* v. *Goodykoontz*, 126 Ind. 535 (26 N. E. 391). The doctrine seems also to have the approval of the Supreme Court of the United States: *Hunt* v. *Rousmanier*, 26 U. S. (1 Pet.) 1; *Elliott* v. *Swartout*, 35 U. S. (10 Pet.) 137; *Bank of United States* v. *Daniel*, 37 U. S. (12 Pet.) 32. The learned authors of the American and English Encyclopedia of Law (vol. 20, 2 ed., 816), say: "It is one of the fundamental maxims of the common law that ignorance of law excuses no one. It is a maxim founded not only on expediency and policy, but on necessity"—giving as the basis for it the reason stated in *Hardigree* v. *Mitchum*, 51 Ala. 151, that, if ignorance of the law were permitted to prevail, the courts would be involved with well-nigh interminable inquiries and embarrassments, so that the administration of justice would become impracticable. The authors further say: "It is therefore applied most rigidly at law, and is only relaxed in equity where the mistake is mixed with misrepresentation or fraud, or where the ignorance of the complainant has conferred upon the defendant a benefit which he cannot in good conscience retain." So, in volume 15, at page 1102, they affirm that "Although a few of the earlier English decisions and some decisions in the United States maintain a contrary doctrine, the settled weight of authority is that money voluntarily paid in ignorance of law, without fraud or imposition, and with knowledge of all the facts, cannot be recovered back, either at law or in equity," citing cases from England, Canada, the Supreme Court of the United States, and the courts of twenty-six of the States of the Union.

It is unnecessary to go further with the authorities. That the action of *indebitatus assumpsit* will lie for money paid which in justice and good conscience ought not to be retained is well established, and of the earliest cases upon the subject is *Moses* v. *Macferlan*, hereinabove referred to, wherein Lord MANSFIELD announced the doctrine. The basis of the action is peculiar, in that there is no privity of contract between the parties ; but the law implies a promise, hence that the form of action will lie : *Brand* v. *Williams*, 28 Minn. 238 (13 N. W. 42). But the question whether a person ought in equity and good conscience to pay over, or whether it is unconscientious for him to retain, what he has received from another, is a question dependent upon the facts of each particular case. The Latin maxim, *Ex æquo et bono*, most frequently applied in such cases, simply means "in justice and good dealing" (Bouv. Dict.), and what might be against conscience or contrary to justice and good dealing in one case and under one set of facts would not be in another. We may give some instances. Mr. Broom speaks of a case where A., a tenant of B., received notice from C., the mortgagee of B.'s term, that the interest was in arrear, and requiring the payment to her (C.) of the rent due. A., notwithstanding this notice, paid the rent to B., and was afterward compelled by distress to pay the amount over again to C. *Held*, that the money, having been paid to B. with full knowledge of the facts, could not be recovered back; citing *Higgs* v. *Scott*, 7 C. B. *63. Another case is where a party conveyed to another realty lying in a street under a mistake of law on the part of both that, if the street was ever opened by the municipality, the grantee would receive compensation therefor; relying upon a decision of the court that was afterward overruled, and it was held that no recovery could be had for the consideration thus paid for the premises

45 OR.——35

under such a mistake: *Champlin* v. *Laytin,* 18 Wend. 407 (31 Am. Dec. 382). So, in *Erkens* v. *Nicolin,* 39 Minn. 461 (30 N. W. 567), where one paid for a deed to lands which he already owned in ignorance of the rule of law that distances must yield to natural boundaries called for in a deed, and the court held that the money could not be recovered back. So, also, in *Evans* v. *Hughes County,* 3 S. D. 244 (52 N. W. 1062), where Evans paid the county for an exclusive ferry franchise which he and the county believed as a matter of law the county was empowered to grant; but, upon its being ascertained that the county had no such authority, and that Evans did not get what he supposed he was getting, an action was instituted to recover the money paid therefor, and the court said "No"; that the mistake was one of law, and that the action would not lie.

So the general rule is that one paying taxes voluntarily, without legal duress or coercion, cannot recover them back, and this applies although they be unconstitutional: 27 Am. & Eng. Enc. Law (2 ed.), 757, 758, and note 3 to 757. In the abstract, it was assuredly against conscience in any of these cases for the parties receiving the money to retain it, for they parted with no adequate or material consideration for it; yet, when connected with the facts of the cases, the courts say that, having paid voluntarily, with knowledge of the facts, but under a mistake of law, the money so paid is not recoverable, and, in effect, that it is not inimical to the maxim *Ex æquo et bono,* or against good conscience, for the one receiving to retain it. So, we may put a case very near to the one at bar. Suppose the children of Mrs. Stephens had been the executors' of this estate, and had paid the money that has been paid by these executors to the defendant under a mere mistake of law, knowing the facts, how would the idea of good conscience or of justice and good dealing affect it? It would

be said at once that it was not unconscionable for her to retain it, and that no recovery could therefore be had.   But in the abstract it would be just as wrong and just as violative of justice for her to retain the money in that instance against legal right, as to retain it against these executors.   This is strongly illustrative that it is the fact that controls, and the error with relation thereto, and not a mistake as to the law ; and the law will not imply a promise to repay unless there is mistake or ignorance as to the fact, or unless there is some fraud or deceit, active or implied, that may be said to induce the payment in the first instance.   We conclude, therefore, that a mistake as to law, with knowledge of all the facts, there being no fraud or deceit or undue importunity, will not excuse ; but, where there is an error of fact, *bona fide* — as where some fact exists that is unknown, or is supposed to exist when in reality it does not, not arising from the intentional neglect of the party to inquire as to the real condition, even if accompanied with a mistake or ignorance of the law — a recovery may be had.   There is no rational distinction, in legal effect, between a mistake of law and ignorance of the law, and one will not excuse more than the other.   We are impressed that the rule is stated too broadly in *Clarke* v. *Dutcher*, 9 Cow. 674, that, "where money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back," etc., in that the latter condition will not prevail unless the facts are such as to estop plaintiff to allege that he was without knowledge. The doctrine is better stated in *Mowatt* v. *Wright*, 1 Wend. 355 (19 Am. Dec. 508), and *Hurd* v. *Hall*, 12 Wis. 125.

2. In view of these considerations, we are clear that the conclusions of law found by the trial court do not follow from the findings of fact, and that the latter do not support the judgment rendered.   The second finding is,

simply, that plaintiffs paid the money to defendant under the belief that she was entitled to it as a child of Hosea Stephens- under the provisions of the codicil, which means nothing more than that plaintiffs believed that defendant was entitled to the money as heir to Hosea, being his child, and inheriting from him, he being legatee under the codicil, and, so believing, paid the money over to her. Otherwise rendered, it would be in direct antagonism to one theory of the complaint, which is that plaintiffs were informed and believed that Hosea was a legatee under the codicil, that he was alive when it took effect, and that defendant was entitled to recover the money as his daughter and heir. The information and belief that Hosea was a legatee follow from the information and belief that he was alive when the codicil took effect, so that the former is a conclusion of law in the premises; but it excludes the idea that they believed that Eva took as a legatee, nor is it alleged anywhere in the complaint that she took as a a legatee under the codicil or the will.

3. The sixth finding is that it does not appear from the evidence that plaintiffs had any belief or knowledge as to whether Hosea was living at the time of the execution of the codicil, or that the plaintiffs believed that he was living at the time of the death of the testator. The complaint seems to have been drawn upon two theories, or, at least, they are so incorporated. The first is as we have just stated. If such theory be true in fact, plaintiffs would be entitled to recover, because there would have been a payment under a mistake or error as to the fact of Hosea being alive at the time, when in matter of fact he was dead. But the facts as here alleged, the court says by the sixth finding, do not appear by the evidence, so that the plaintiffs have failed to make a case upon that premise. The second idea is that plaintiffs did not know at the time they paid the money that Hosea was not living

at the time the codicil became effective, and did not ascertain the fact that he was not named or referred to in the codicil as one of the legatees, and that he was not entitled to receive the legacy mentioned, and that defendant was not entitled to receive the same, until after the money was paid. If these allegations were true, and plaintiffs were not intentionally neglectful in ascertaining the real facts in relation thereto, and if they paid the money assuming *bona fide* that Hosea was alive at the time when the codicil took effect, when in truth he was not, and hence that he was a legatee, then there was also an error of fact, for which they should be excused and ought to recover. But there is absolutely no finding as to these allegations, and the findings of fact in the other alternative, as we have seen, do not support the judgment.

4. The appellant, after the findings of fact and conclusions of law had been rendered and filed, and before judgment, moved the court to make other findings of fact in the place and stead of the second and sixth findings, and to make two other additional findings, in substance, that at the time the several payments were made the defendant and her guardian claimed and believed that defendant was entitled to receive the money as legatee under the will of the testator, and that the money was paid to her as such legatee by plaintiffs, with full knowledge on their part of all the facts of her relationship to the testator on which defendant's claim was based, and error is assigned by reason of the court's refusing them. These requested findings go to the very gist of the action. But it is not in the province of this court to make findings of fact in a law action, nor can we substitute one finding in the stead of another, unless it might be in a case where no other reasonable inference could be drawn from the evidence, which is not apparent here. These are matters exclusively for the trial court.

5. Another motion was interposed for judgment dismissing the action, based upon the pleadings, evidence, and stipulations of facts. But this involves findings of facts from the evidence also, and error is not assignable.

For the reason, however, that the judgment is not supported by the findings of fact, it will be reversed, and the cause remanded for a new trial.          REVERSED.

---

Decided 15 May, 1905.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

6. The appellant's counsel, by an able and cogent petition for rehearing, insist that the court has fallen into an error in its construction of the complaint, through a confusion of "error of fact" with "ignorance of fact," but upon a careful reëxamination of the matter we have arrived at the same result. "An error of fact takes place either when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist": *Mowatt* v. *Wright*, 1 Wend. 355, 360 (19 Am. Dec. 508). This is, in substance, the definition given by Mr. Chief Justice DIXON in *Hurd* v. *Hall*, 12 Wis. 125, 138, which he denominates "*ignorantia facti*," thus indicating that in practical effect, at least, they are substantially one and the same thing. Ignorance is the "lack of knowledge," and ignorance of fact is the "want of knowledge of the fact in question": Bouv. Dic. "A mistake of fact consists in an unconsciousness, ignorance, or forgetfulness of a fact, past or present, material to the transaction, or in the belief of the present existence of a thing material to the transaction which does not exist, or in the past existence of a thing which has not existed": 20 Am. & Eng. Enc. Law (2 ed.), 807. Technically, a mistake of fact has the

broader significance, "and extends to and includes the case of a party who, through mere ignorance of the existence or nonexistence of a material fact, is induced to do an act * * injurious to himself, where, if he had been informed of the existence or nonexistence of such fact, he would not have performed such act": *Hurd* v. *Hall,* 12 Wis. 125. Then following this observation is the statement that "ignorance of the existence or nonexistence of a material fact precludes the idea that the party at the time of the transaction should have been influenced by it, for it is impossible that the mind should be moved by that of which it knows nothing." This latter observation simply means that a person could not be influenced by a fact of which he knew nothing or was not conscious of, but it does not follow that he might not be influenced by a supposed fact, or one about which he was mistaken, and thought existed or had come to pass, when in reality it had not. In such a case the real fact would not influence the mind or act, but the supposed fact would. Hence the mistake or error of fact, supposing it to be one thing instead of another, and acting accordingly. But he might act without reference to the fact, knowing nothing whatever of it, whereas, if he had been apprised of it, his course would have been different, or he would have been held to a different legal responsibility. This, we suggest, would be a technical *ignorantia facti ;* but withal there is yet seeming confusion, for in practice the terms are frequently used as of interchangeable significance. "Considered as a motive of actions," says Bouvier, "ignorance differs but little from error. They are generally found together, and what is said of one is said of both."

But the distinction sought to be maintained cannot help the defendant, because the complaint, as we formerly analyzed it, which we still think to be correct, comprises both ideas of a mistake of fact and ignorance of fact. It

alleges a mistake of fact by setting forth that plaintiffs were informed and believed that Hosea Stephens was one of the legatees and alive at the time, when he was not, and ignorance of fact when they say that they did not know that Hosea was not living at the time of the death of the testator. So that, if either of these allegations were true, and plaintiffs paid the money when demanded, assuming *bona fide* the fact to be that Hosea was alive when the testator died, when in truth he was not, they would be entitled to recover. "This ignorance of fact," says Mr. Chief Justice Dixon in *Hurd* v. *Hall*, 12 Wis. 125, "must be excusable, that is, it must not arise from the intentional neglect of the party to investigate them." A clear, *bona fide* mistake, ignorance, or forgetfulness of facts will entitle the plaintiffs, acting in pursuance thereof in the payment of money, to a recovery. Lord Abinger, C. B., says: "I think the knowledge of facts which disentitles the party from recovering must mean a knowledge existing in the mind at the time of payment :" *Kelly* v. *Solari*, 9 M. & W. 54. The principle was directly approved and adopted in the later case of *Bell* v. *Gardiner*, 43 Eng. C. L. Rep. 16, so that our interpretion of the complaint is within the rule of the adjudicated cases, and to this we adhere.

7. As to the second contention, it need only be said that the facts have not been determined. This was the trial court's function, and we have seen that its findings of fact do not support the judgment, nor will they support a judgment in favor of the defendant, so that we may render judgment thereon accordingly.

8. As to the evidence, there is scope for the drawing of different inferences, and not possessing the authority to try and determine a question of fact in a law action, we cannot make the findings which it is sought to have us render. "On setting aside a judgment in an action at law, the appellate court will not undertake to render or

order final judgment where the facts in issue are contro-
verted or not definitely settled, but will order a new trial":
3 Cyc. 456. The finding that the money was "paid by
plaintiff to the defendant as legatee," etc., was a conclu-
sion of law, and so treated by the court, and it is not
within our province to treat it as a finding of fact.

The rehearing will be denied.

REVERSED: REHEARING DENIED.