(No. 7275.  May 1, 1946.)

BESS ANDREWS and GEORGE L. ANDREWS, Plaintiffs-Respondents, v. BIRDIE GROVER and ARCHIE GROVER, Defendants-Appellants.

[168 P. (2d) 821.]
Rehearing denied May 25, 1946.

O. R. Baum for appellants.

F. E. Tydeman for respondents.

MILLER, J.—This is an action brought by plaintiffs (respondents) for partition of real property. (Title 9, Chapter 5, I.C.A.). Defendants (appellants) demurred to the complaint, which was overruled, and, as a separate and affirmative defense, allege, "that the only effective way for an adjustment of the matter is by an order directing the sale of said properties involved and a division of the proceeds."

Appellants and respondents are joint tenants of Lots 1, 2 and 3 of Block 427, Townsite of Pocatello. The Bunga-

low Court Apartments, consisting of four distinct brick buildings, each of which is 30 x 140 feet, is constructed upon Lots 1 and 2, and a small 4-room frame house, to which is attached a board shed, is constructed upon Lot 3 of said block. Because of the location of the buildings and the small residence thereon, the easterly portion of said property is worth $500 more than the westerly portion. The shed attached to the small residence is not of sufficient value to affect the price. The property is now vacant and badly in need of repair and cannot be rented until improvements are made, and has been condemned by the City Health Department. Respondent, Bess Andrews, and appellant, Birdie Grover, are the owners of the above described property, are sisters and received the property by deed from their father and mother, who had received "all of the income therefrom up until November 15, 1943," after which it was rented for one year to the Union Pacific Railroad Company for $200 a month. From November 15, 1944, to January 1, 1945, $300 was collected from rentals; $72.50 since January 1, 1945.

Mrs. Andrews resides at Pocatello, Mrs. Grover near Springfield, Idaho. Mrs. Andrews has had charge of the property and the responsibility of managing the same. At the present time neither of the parties resides on the property and both are apparently unwilling to accept the management thereof.

August 25, 1945, the Court made and filed findings of fact and conclusions of law and on September 5, 1945, made and filed a decree. The notice of appeal was filed September 24, 1945, and the appeal is from the judgment or decree.

Paragraph VII of the findings of fact is as follows:

"That because of the location of the buildings thereon and because of the small residence thereon, the easterly portion of said property is worth $500 more than the westerly portion."

It is evident from the statement of the case made by counsel for appellants, as well as objections interposed during the trial, that he was of the opinion that a partition of the property could not be made if compensatory adjustment was required, and, for that reason, the plaintiff would

be unable to make a prima facie case. In objecting to a question to Bess Andrews, in which she was asked if she would be willing to take either parcel on the basis of paying more for the east half than for the west half, Judge Baum, among other things, said: "This court only has one duty today, and that is to say, if this can't be divided equally, to hold a sale, or if it can be divided, to appoint referees, —and you cannot assess one dollar against anybody, under our statute." Plaintiffs' sole reason for partition, as alleged in Paragraph VII of the complaint, is as follows: "It is impossible to equally divide the expense or upkeep and maintenance; that the present ownership is detrimental to the best interests of each of the parties hereto; that it is for the best interests of each of the parties hereto to have the property partitioned."

The defendants, in response to the above and as an affirmative defense, alleged: "* * * that said apartments, owing to their location, are not of equal value and are not so situated so that one can have access to the alleys for each of said apartments if the same are divided and were owned other than in joint ownership, and that the only effective way for an adjustment of the matter is by an order directing the sale of said properties and a division of the proceeds."

The examination of George L. Andrews, one of the plaintiffs, is the only testimony introduced by plaintiffs tending to support their complaint, to-wit, that the property should be partitioned.

"Q. (Mr. Tydeman, continuing:) Well, from what experience you have had since the parties to this action, that is, yourself and Mrs. Andrews, and Mr. and Mrs. Grover, held that property,—the means and possibilities of improving it, would you say it can be done without partitioning the property?

"Judge Baum: Objected to as not within the issues, and no foundation laid, if the Court please.

"The Court: You are both asking for partition. What are you trying to prove? The necessity for partition?

"Judge Baum: We ask for a sale of the property.

"The Court: But that is the same thing,—whether a

partition or a sale, it is a division of the property. I think you both agree that you can't manage it jointly, don't you?

"Mr. Tydeman: If we can put that in the record.

"The Court: That is true, isn't it, Judge Baum? You admit that?

"Judge Baum: There is only one issue and that is whether the Court should order a division, or order a sale and divide the properties. That is the only issue in the case.

"Mr. Tydeman: Now then, we offer this evidence of the need of partition, and to show the reason for it, that it is impossible to continue as it is.

"The Court: I will let him answer for that purpose, and that purpose alone.

"A. It is impossible to look after the property without you are living there and looking after it.

"Q. (Mr. Tydeman, continuing:) Is it possible to continue under the conditions as they exist now?

"A. It is not."

In a consideration of said matter, the trial court proceeded under the provisions of Section 9-541, I.C.A., and in which it is provided:

"When it appears that partition cannot be made equally between the parties, according to their respective rights, without prejudice to the rights and interests of some of them, and a partition be ordered, the court may adjudge compensation to be made by one party to another on account of the inequality * * *. And in all cases, the court has power to make compensatory adjustment between the respective parties according to the ordinary principles of equity."

The respondents desired a partition of the property, but apparently were not in favor of a sale thereof and a division of the proceeds. We find nothing in the record to definitely support such contention. The appellants, so it is stated, opposed a partition and sought a sale and distribution of the proceeds. The testimony on either proposition,

that is, a partition or a sale, is very slight. Appellants did not testify. The trial court visited the property. In all probability, he was more or less impressed as a result of the investigation on the ground, and but for that fact, and the impressions he evidently obtained, we think a sale of the premises, rather than a partition, could have been more equitably ordered.

Mr. R. S. Turner, for twenty-four years a businessman in Pocatello, put a valuation of $8500 on the whole property", the easterly half at $4500 and the westerly half at $4000. Earl Campbell testified in substance that if the property were partitioned the installation of a heating plant in each of the units or parcels would cost $6000, but that a heating plant to serve the entire property could be installed at a cost of $8000. The introduction of such proof unquestionably was for the purpose of showing that, as a business proposition, the property should be kept intact and as a single unit, rather than ordering a partition thereof and thereby entailing a greatly increased operating expense, if and when the property is to some extent modernized so as to meet the requirements of the City Health Department.

We are at a loss to determine where the evidence, if any, for the conclusions, "That the defendants have their choice of the parcels of the land," and "That upon a settlement and entry of the findings of fact and conclusions of law, the defendants within fifteen days file herein their election of the parcel of land to be received by them and that a decree be entered in the above entitled matter, conforming to these findings of facts and conclusions of law and said election," came from. There is nothing in the record touching said matter. If the property is to be partitioned something must be done to determine the awards, which should be based on some agreement between the parties or other adequate record. Mrs. Andrews testified that the easterly parcel was worth $4500 and the westerly parcel $4000; and "I would be willing to take either half and pay the difference of the east half." Attorney for respondents, at page 14 of their brief, says: "The appellants had their choice of either parcel and respondents are still willing to let the appellants make their choice."

Among the errors assigned by appellants are the find-

ings of the court that the evidence was insufficient to show that the property could not be partitioned without great prejudice, and in not ordering a sale and division of the proceeds therefrom; that is, that there was no evidence to support the findings of the court and notably Paragraphs VII, VIII, X, XI and XV; and that Finding Number XVI is too general. Appellants also contend that it was error on the part of the Court to conclude that the property could be partitioned, and that the decree was not supported by the conclusions.

In disposing of appellants' assignments of error, and, generally, the insufficiency of the evidence to support the findings, as enumerated, we think it is sufficient to say that, inasmuch as the action must be reversed and remanded, we deem it unnecessary to comment on the various assignments separately. We take this occasion, however, to advise that said purported assignments failed to conform to the requirements of Rule 52, in that they are too general. As stated in *Burton v. Bayly,* 50 Ida. 707, 300 P. 359:

"None of the assignments of error point out in what particulars the court erred and, therefore, do not comply with the requirements of Rule 40 requiring appellant's brief to contain a distinct enumeration of the errors relied upon. General statements specifying that the court erred (*McDonald v. North River Ins. Co.,* 36 Ida. 638, 213 P. 349), or that the evidence is insufficient to sustain the findings, verdict, or judgment (*Hill v. Porter,* 38 Ida. 574, 223 P. 538; *Bell v. Morton,* 38 Ida. 758, 225 P. 137; *Merrill v. Fremont Abstract Co.,* 39 Ida. 238, 227 P. 34; *Idaho Falls Nat. Bank v. Ford,* 46 Ida. 492, 269 P. 100; *Newport Water Co. v. Kellogg,* 31 Ida. 574, 174 P. 602; *Hurt v. Monumental Mercury Min. Co.,* 35 Ida. 295, 206 P. 184; *Morton Realty Co. v. Big Bend Irr. Co.,* 37 Ida. 311, 218 P. 433; *Howell v. Kahn,* 42 Ida. 277, 245 P. 86), without pointing out the particulars of the insufficiency, are too indefinite to merit consideration by this court on appeal."

See, also, *Kootenai County v. Kinman,* 56 Ida. 1, 47 P. (2d) 887; *Slusser v. Aumock,* 56 Ida. 793, 59 P. (2d) 723, in which it is said:

"General assignments specifying that the court erred, or that the evidence is insufficient, without pointing out

the particulars of insufficiency, are too indefinite to merit consideration."

The decree shows that plaintiffs are to pay the defendants the sum of $25.59, and that the abstract is awarded to defendants. The record fails to state what the $25.59 is for, and we are uncertain now as to the reason for adjudging that plaintiffs should pay defendants said sum. It could, however, have come about in this manner: the conclusions show that the party retaining the abstract should pay the other party $25.75, the abstract being valued at $51.50. The conclusions also show that plaintiffs should pay defendants $51.34, very likely as one-half of the $102.68 mentioned in Paragraph XIII of the findings of fact. By taking one-half of the cost of the abstract, $25.75, and deducting it from one-half of $51.34, being one-half of the $102.68, there is left the sum of $25.59, the amount mentioned in the decree. If the foregoing is correct, then the mutual demands in the nature of debts and credits between the parties arising out of fiduciary relations are discharged and satisfied.

■ The conclusions of law, among other things, provide: "That for the purpose of this partition the person receiving the easterly parcel shall pay to the person receiving the westerly parcel the sum of $500." There is no finding of any proof supporting such conclusion.

This conclusion, it will be observed, is not in harmony with the finding contained in Paragraph VII of the findings of fact, and wherein it is found that the value of the easterly portion or parcel of said property is worth $500 more than the westerly parcel. The decree shows:

"The court having so found (findings of fact, Paragraph VII), it is hereby ordered, adjudged and decreed that the easterly parcel of said land is worth $500 more than the westerly portion of said land."

Immediately thereafter, the decree recites:

"It is further ordered, adjudged and decreed that the easterly parcel of said land be, and the same is hereby, awarded to the defendants, and they are ordered to pay to the plaintiffs the sum of $500, and upon the payment of such sum the plaintiffs are to deliver to the defendants a quit-claim deed to said property and all thereof."

The difference in the value of $500 in the two parcels of land was arrived at largely from the fact that there is a small house on the easterly parcel, and the court, in making compensatory adjustment between the respective parties (Section 9-541, supra), according to the ordinary principles of equity, undertook to equalize the values of said parcels by requiring the parties receiving the easterly parcel to compensate the ones receiving the westerly parcel, so that the value of said parcel would be the same. Unless a compensatory adjustment were made, a division of said property would not be in accord with the ordinary principles of equity. If the westerly portion is of the value of $4000, and the easterly parcel is of the value of $4500, we have a total of $8500. If the persons awarded the easterly parcel are required to pay the persons awarded the westerly parcel the sum of $500, then, for all practical purposes, the relative values have been reversed and the westerly parcel is of the value, cash and land, of $4500, and the easterly parcel is of the value of $4000, after subtracting the cash payment made to the persons awarded the westerly parcel. Undoubtedly, it was the intention of the court to make a compensatory adjustment that would equalize the values as between the parties, and in doing so the court should have required the parties awarded the easterly parcel to pay to the ones awarded the westerly parcel the sum of $250 instead of $500. If such had been done, then the respondents would have a land value in the westerly parcel of $4000 and cash of $250, or $4250; and appellants would have a land value in the easterly parcel of $4500 less a cash disbursement of $250, or $4250, making the total of $8500, which the record shows both parcels to be worth. It is not difficult to understand how a mistake of this kind came about. Had it been taken into consideration that the persons receiving the easterly parcel, either appellants or respondents, owned an undivided one-half interest in the increased valuation of the easterly parcel over that of the westerly parcel, then there would have been little or no occasion for the mistake that has been made.

██ The decree was made and filed September 5, 1945, or four days before the expiration of the time in which appellants were authorized to exercise a choice as to which parcel of the premises they would select. We think the filing of the decree in advance of the time limit, or of a waiver thereof by appellants, constitutes error even though

there is no evidence showing that the appellants were entitled to an election.

The findings of fact, conclusions of law and decree are in such condition that this court is unable to harmonize the mistakes appearing therein, or to gather therefrom just what was intended by the trial court. The only thing to be done because of the state of the record is to reverse the judgment and send the case back for the trial court to make new findings of fact, conclusions of law and to enter a decree in accordance therewith. If the parties, or either thereof, desire to introduce further testimony or present additional evidence for the sole purpose of aiding the trial court in determining whether the property should be partitioned or ordered sold and the proceeds distributed, then the trial court should permit them so to do, and if that is done the trial court will make its findings of fact, conclusions of law and enter judgment and decree based thereon. The judgment is therefore reversed, and the cause remanded with directions to the trial court to proceed as herein indicated. No costs awarded.

Budge and Holden, JJ., concur.

AILSHIE, C.J., Concurring—While I concur in a reversal of the judgment in this case, I also think the record abundantly shows the impracticability of a division of this property as it stands. The thing the court should do is to order a sale. It appears to me wholly impracticable to divide this property subject to the easement for pipelines for water, heat, and sewerage, and to do so will simply furnish a perpetual ground for misunderstandings and bickerings between the parties concerning the repair and use of the pipelines and the easement necessary in connection therewith.

GIVENS, J., Specially concurring—Except as to the strictures on the insufficiency of the assignments of error in appellant's brief, I concur.