Argued September 10, reversed and remanded November 15, 1973

# HAWKINS ET AL, *Appellants, v.* TEEPLES and THATCHER, INC., *Respondent.*

515 P2d 927

152

*Fred P. Eason,* Coos Bay, argued the cause and filed the briefs for appellants.

*Daniel J. Seifer,* Portland, argued the cause for respondent. With him on the brief were Kobin & Meyer, Portland.

TONGUE, J.

This is an action by a subcontractor against a general contractor for breach of a contract on a construction job, with a counterclaim by the general contractor against the subcontractor for breach of the same contract. The case was tried before the court, without a jury. The trial court found for plaintiffs on their complaint in the sum of $6,636.27—the full amount prayed for—and then found for the defendant on its counterclaim in the sum of $11,501.19. The court then entered judgment in favor of defendant and against plaintiffs for the difference, in the sum of $4,864.92. Plaintiffs appeal.

*The facts.*

Defendant was the general contractor for the construction of a sewage treatment plant for the City of North Bend. Because of the low elevation and the high water table of the plant site and the need for the "excavation hole" to be dry, defendant entered into a subcontract with plaintiffs to "dewater" the plant site. This was to be accomplished by "jetting" into the ground a series of 70 vertical "well point" pipes in a pattern on all four sides of the plant site and then connecting the tops of such pipes to a horizontal "header pipe," to be connected with a pump. The subcontract, on a printed form provided by defendant, and dated July 23, 1971, had no fixed date for completion of the "dewatering" operation, but specified a fixed

contract price of $6,636 and included the following provisions, as Article IX:

"Should the SUBCONTRACTOR, in any respect, fail to prosecute the work with promptness and diligence, or fail to carry on the work in the manner provided in this contract, the CONTRACTOR shall be at liberty, after two (2) days notice to the SUBCONTRACTOR to remedy such defects or breach, to declare the contract to be in default, and to take over the completion of the work contracted for, and, in that event, the SUBCONTRACTOR shall not be entitled to receive any further payment until the said work be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred in finishing this work, such excess shall be paid to the SUBCONTRACTOR, but if such expense shall exceed such unpaid balance, the SUBCONTRACTOR SHALL PAY THE DIFFERENCE TO THE CONTRACTOR."

On July 26, 1971, defendant "authorized" plaintiffs to start work "immediately." Plaintiffs then "jetted in" the "well points," connected the "header pipe" and started pumping on August 15, 1971. The next day, according to the plaintiffs, the water level was dropping in a satisfactory manner and they informed defendant that it could move in equipment and start excavation.

According to defendant's witnesses, however, plaintiffs' pumps did not discharge any significant amount of water and it was evident that plaintiffs' "dewatering" system was not and could not "dewater" the excavation area in a satisfactory manner.

On the morning of August 16, 1971, after plaintiffs had been pumping for some 12 hours, defendant delivered a written note to plaintiffs stating that if the system "is not in full operational condition by the end

of the work day, today, Aug. 16, 1971, they will have to declare you as being unable to fulfill your subcontract agreement with them" and that, in such an event, defendant would take over the work and charge plaintiffs with any resulting costs. Plaintiffs admitted that "they had told us they wanted us to do it as fast as we could and they said that they wanted us to get started immediately, and they asked us two or three times why we hadn't." They testified, however, that this was the first "complaint," at least about the manner in which the work was being done or one that charged the system as installed by them with being defective in any way.

The next morning, on August 17, 1971, plaintiffs were dismissed from the job. Defendant then engaged another subcontractor, who installed a similar "dewatering" system in four days, but with a different type of "well points," packed in gravel, and with a larger "header pipe" and a different type of pump. That system operated successfully and six or seven days later defendant started its excavation. Plaintiffs' "well points" were removed and, according to defendant's witnesses, they were found to be clogged with sand. This was denied by plaintiffs.

*The pleadings.*

Plaintiffs' complaint, after alleging the contract, alleged that plaintiffs "performed all the work required by the contract," but that "defendant terminated plaintiffs' work, without cause, and in violation of the contract" and breached the contract in three respects: by terminating plaintiffs' work "without giving two days' notice as required by Article IX," by doing so "without causes as described in Article IX," and by failing to pay plaintiffs as required by the contract.

Defendant's answer denied these allegations and alleged, as a counterclaim, that the parties entered into the contract; that defendant "has performed its obligation" under the contract, but "was required to declare the contract to be in default" and that:

"Hauser [sic] has breached said subcontract agreement, in that Hauser [sic] failed and refused to provide, furnish or install a well point system to provide a dry excavation hole, failed to remove such apparatus as was installed, and failed to furnish materials and installation which complied with the specifications of the agreement, all as required by the aforesaid subcontract agreement."

Defendant then alleged that it had been damaged in the sum of $18,212 and prayed for judgment in that amount.

These allegations were denied in plaintiffs' reply.

*The findings and judgment of the trial court.*

At the conclusion of the trial, the trial judge stated that:

"\* \* \* [T]he Court finds for the plaintiffs on Plaintiffs' Complaint on the basis, principally, that the contract, which was provided and written by the defendant, provides for a two-day notice, and that notice was not given him.

"The defendant got anxious and couldn't wait the extra 24 hours. If the defendant had waited until the 18th before terminating him, it might have been all right, but when they jumped in there and give him notice on the 16th and then threw him off the job on the 17th they breached the contract, and it was their own contract. They were the ones that drew the contract, and on their own printed form according to their evidence."

Next, with reference to the counterclaim, the trial judge stated:

"The counterclaim—I am afraid the Court must find in favor of the defendant there.

"There is no question—it appears, at least, when all the evidence is in—particularly the evidence in support of the counterclaim—that there was a breach here on behalf of the plaintiffs, that the plaintiffs could not produce a working system and did not, and it is very questionable as to whether they could have had they been given an extra 24 hours. I can't actually say whether they could or couldn't. * * *"

The court then entered a judgment which stated that:

"The court finds in favor of plaintiffs on their complaint in the sum of $6,636.27. The court further finds for defendant on its counterclaim in the sum of $11,501.19. Based on the foregoing, it is hereby

"ORDERED that defendant have and recover judgment against plaintiffs and each of them in the amount of $4,864.92, * * *."

*The findings of the court are so inconsistent and confusing as to be insufficient to support the judgment.*

Plaintiffs' assignment of error is that "the court erred in finding in favor of defendant on its counterclaim after finding for plaintiffs on their complaint." Implicit in this statement is the contention that it was inconsistent for the trial court to find in favor of defendant on its counterclaim after finding for plaintiffs on their complaint.

■ It is established, of course, that a general finding of fact by a trial judge in an action at law tried without a jury is the equivalent of a jury verdict and cannot be set aside by this court when supported by any substantial evidence. *Gordon Creek Tree Farms v. Layne et al,* 230 Or 204, 217, 358 P2d 1062, 368 P2d 737 (1962). As stated in *Honeywell, Admr. v. Turner,* 214 Or 700, 705, 332 P2d 638 (1958), "The finality of a finding by the trial court when sitting as a jury is too frequently lost sight of."

■ It is also established, however, that when findings of fact by a trial court are either so inconsistent or so confusing, vague or indefinite that this court cannot determine the facts that the trial court intended to find, such findings are insufficient to support a judgment. See *Larsen v. Martin,* 172 Or 605, 611, 143 P2d 239 (1943); *United States v. Jefferson Electric Co.,* 291 US 386, 406, 54 S Ct 443, 78 L ed 859 (1934); *Zuccaro v. Frenze,* 76 RI 391, 71 A2d 277 (1950); *Meyer v. White,* 54 Cal App 293, 201 P 801 (1921); and *Andrews v. Grover,* 66 Idaho 742, 168 P2d 821 (1946).

■ In this case there was a basic inconsistency in the findings by the trial court. In order for plaintiffs to prevail under their complaint for damages for breach of contract they were required to prove, in addition to a breach of the contract by defendant, either substantial performance of the contract by themselves or a valid excuse for failure to do so, such as by a wrongful termination of the contract by defendant, as alleged in plaintiffs' complaint. *Lamb-Weston et al v. Ore. Auto. Ins. Co.,* 219 Or 110, 116, 341 P2d 110, 346 P2d 643 (1959). Cf. *Macomber v. Waxbom,* 213 Or 412, 417, 325 P2d 253 (1958).

Plaintiffs' complaint alleged both substantial performance and also an excuse for nonperformance. The trial court apparently found that plaintiffs did not substantially perform the contract, but that this was excused by defendant's wrongful termination of the contract in that defendant did not give plaintiffs two days' notice of termination, as required by the contract.[①] The trial court also expressly declined to find

---

[①] See 6 Corbin on Contracts 64, § 1266; 3 Black on Rescission and Cancellation (2d ed) 1409, § 572; and 2 Merrill on Notice (1952 ed) 155, § 747.

that plaintiffs could not have completed performance of the contract "had they been given an extra 24 hours."

On the other hand, defendant's counterclaim also proceeded on a breach of contract theory. However, defendant did not seek recovery under the provisions of Article IX for the amount by which the expense of completion exceeded the unpaid balance due on the contract, but instead sought to recover the total cost and expenses incurred by defendant in completing the project.

■ Although not entirely clear, it appears that defendant may have been proceeding on the theory that the contract did not provide the exclusive means of terminating the contract and that defendant could terminate it without the stipulated notice where the breach was material.[②] In order to prevail on such a theory, however, defendant would have to prove not only that plaintiffs' breach was in fact material, but also that defendant had substantially performed its own obligations under the contract.

For the same reasons, in order to find in favor of defendant on its counterclaim, the trial court necessarily had to find not only that there was a material breach of the contract by plaintiffs, but also that there was a substantial performance of the contract by defendant. Such a finding, however, is completely inconsistent with the previous finding that defendant violated the contract by wrongfully terminating it, as

---

[②] See 6 Williston on Contracts (3d ed) 165, n. 1, § 842, citing Foster-Porter Enterprises, Inc. v. DeMare, 198 Md 20, 81 A2d 325 (1951). See also Young Travellers Day Camps, Inc. v. Felsen, 118 NJ Super 304, 287 A2d 231 (1972); Valentine v. Patrick Warren Const. Co., 263 Wis 143, 56 NW2d 860 (1953); and 2 Merrill, *supra* note 1 at 314-381, §§ 808-866.

necessary to support the previous finding of the trial court in favor of plaintiffs on its complaint.

It may be that the trial court was attempting to apply the damage provisions of the contract and to award defendant the "difference" or "excess" of the total expenses incurred upon engaging another subcontractor and the unpaid balance payable to plaintiffs. This is by no means clear, however, and such a result would only be proper if notice of termination had been given by defendant in accordance with the provisions of Article IX, whereas the trial court found the contrary to be true. In addition, such a result would be outside the scope of the pleadings, because neither party sought to obtain a determination under Article IX of the amount of any "excess" or "difference" owing to either party, as provided by that provision of the contract.

■■ This being an action at law, rather than a suit in equity, this court has no power to make any different or additional findings of fact, much less to try this case "de novo" on this appeal. On the contrary, our review of this case is limited to a determination of whether the findings by the trial court are supported by any substantial evidence and whether such findings are sufficient to support the judgment. Cf. *Andersen v. Waco Scaffold & Equip.*, 259 Or 100, 104, 485 P2d 1091 (1971). Because, however, the findings in this case are so inconsistent and confusing that we cannot determine what the trial court intended to find, they are insufficient to support the judgment of the trial court in this case. It follows that we must either remand for further findings by the trial court or remand for a new trial.

We have, on occasion, remanded cases for fur-

ther findings, rather than for a new trial. See *Larsen
v. Martin, supra,* and *Andersen v. Waco Scaffold &
Equip., supra.* In other cases, however, we have been
critical of that practice and have preferred to remand
cases for a new trial. See *Farris v. Pendleton,* 204 Or
530, 537, 281 P2d 972, 284 P2d 362 (1955), and *Scott v.
Ford,* 45 Or 531, 552, 78 P 742, 80 P 899 (1905). See
also *United States v. Jefferson Electric Co., supra,* and
*Zuccaro v. Frenze, supra.*

■ This case is one in which there is a basic in-
consistency in the findings by the trial court, rather
than one in which the findings are incomplete or am-
biguous, but might be rendered sufficient by the mak-
ing of additional findings. In addition, the trial judge
was unable to determine from the evidence whether
plaintiffs could or could not "produce a working sys-
tem" (i.e., one that would satisfy contract require-
ments) if given a full two days' notice, as provided by
the contract. As we read the record, little evidence was
offered on that issue, among others.

Upon a new trial both parties may offer evidence
which will make it possible to resolve this and other
issues. For these reasons, and under all of the facts
and circumstances of this case, we hold that the judg-
ment of the trial court should be set aside and that this
case should be remanded for a new trial.

Reversed and remanded.

O'CONNELL, C. J., dissenting.

If the trial judge's statements made in explanation
for the judgment are given a strictly literal reading
there is, to be sure, an irreconcilable inconsistency in
his conclusions.

However, the process of reasoning which the

trial court used in reaching its conclusion is so evident that it seems unfair and highly technical to remand the case for a new trial.

It seems clear that the court, as the trier of the facts, concluded either that the plaintiffs could not produce a working system or that, if this was not established with certainty, the circumstances were such that defendant was not unreasonable in assuming that the plaintiffs could not perform and consequently acted reasonably in taking plaintiffs off the job and substituting another contractor to continue with the work. If defendant had given two days' notice before acting, there would not have been any question of the defendant's right to terminate the contract. But defendant was faced with a problem not covered by the contract; that is, where it was evident that plaintiffs could not perform and consequently the giving of two days' notice would serve no purpose. Under such circumstances, though the notice given did not comply with the terms of the contract, defendant was nevertheless entitled to recover because its breach was merely technical and justifiable.[1] In my opinion this is what the trial judge purported to say. His statement, "I can't actually say whether they [plaintiffs] could or couldn't" have performed is not inconsistent with this since the crucial factor is not the plaintiffs' actual capability to perform as determined at the time of trial, but rather their apparent capability at the time of termination.[2]

Having decided that defendant was to prevail, the court was then faced with determining the amount of damages. The court found that defendant expended

---

[1] 6 Corbin on Contracts, § 1259, pp. 32-33 (1962); Restatement, Contracts § 280 (1932).

[2] *See* Corbin *supra* § 1260.

$11,501.19 to have the plant site dewatered. But it was clearly not entitled to that amount since it would have been required to pay $6,636.27 for the work if plaintiffs had completed their contract. Defendant was entitled only to the amount in excess of that which it was required to expend due to plaintiffs' failure to perform. This amount was $4,864.92. To have awarded defendant more than this would have been to enrich defendant unjustly.

The problem in this case is presented by the trial judge's explanation for the result he reached. Instead of explaining the result as having been reached by crediting plaintiffs with the $6,636.27 to prevent unjust enrichment, the court cast his reasoning in terms of an award made pursuant to the prayer of plaintiffs' complaint. Although, technically, this was inconsistent with permitting defendant to recover on its counterclaim, it nevertheless seems evident that the court was simply computing the net damages which defendant suffered. For this reason, further proceedings seem unnecessary and I would affirm the result reached by the trial court.

Moreover, even if the court cannot accept this interpretation, I still see no need to remand for a new trial. It does not appear that additional evidence is necessary for a proper determination of this case. The trial judge's error was one arising out of his explanation of the theory upon which he reached his conclusion. Additional evidence would not be helpful in resolving the dilemma presented by the literal reading of the language which he used in arriving at his conclusion. All we need is a clarification of his oral opinion—something we ourselves have been called upon to do from time to time.