## GODFREY v. DALQUIST.

Where a juror and the plaintiff, for whom verdict was rendered, were drinking together in a saloon during a recess of the court, in direct violation of the express order of the court, and were conversing concerning the trial then in progress, it was misconduct, and ground for a new trial.

(Opinion filed May 10, 1911.)

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Action by A. E. Godfrey against Perry Dalquist. Judgment for the plaintiff, and defendant appeals. Reversed, and new trial ordered.

*Mousor & McClaskey,* for appellant.   *C. A. Kelley* and *James Byrnes,* for respondent.

SMITH, P. J.   Appeal from an order denying a motion for a new trial on the ground of misconduct of a juror and of plaintiff, who was successful in the lower court. Appellant's affidavits disclose: That one Elmer Newton was a member of the jury which tried the case. That during an adjournment, on the evening of January 7, 1910, in the Senate Saloon, in the city of Huron, the juror Elmer Newton was seen drinking over the bar with the plaintiff, A. E. Godfrey, and was heard talking with plaintiff about the case then on trial. That the juror and plaintiff were talking about a deposition that day read to the jury. Newton said: "The deposition was so long that he nearly fell asleep during the reading of it; that he looked around and saw the judge did not seem to be paying much attention, also one or two of the other jurors; and that he thought he was probably paying as much attention as these others." Godfrey said that "there would probably be a couple of more depositions to be read tomorrow." Some one of the party replied that "he hoped they would not be as long as this one was." That they were talking together about five minutes in this saloon. It is shown that neither defendant nor his counsel was aware of the conduct of the juror and of the plaintiff till several days after verdict had been rendered. In response to this motion, the juror, Elmer Newton, swore that he was in the Senate Saloon on the night of January 7th, but that no drinks were furnished or paid for by the plaintiff, that he did not talk with plaintiff about any of the facts or evidence bearing upon the merits of the case, and that plaintiff did not say anything to him in regard to the merits of the case, or in any way influence or attempt to influence him in his decision as a juror. An affidavit similar in substance was made by the plaintiff, Godfrey. Upon this showing, the court denied defendant's motion for a new trial. This ruling is assigned as error. No other error is discussed in appellant's brief.

In the case of Peterson v. Siglinger, 3 S. D. 255, 52 N. W. 1062, it appeared that the sheriff, who was defendant in the action, at the request of the presiding judge, went to the jury room and informed the bailiff that the judge desired to know whether the jury would probably agree before midnight; that the bailiff unlocked the door, called the foreman of the jury, and the sheriff informed him of the judge's request; that while the foreman was considering what answer to return to the judge, two or three other jurors spoke to defendant, and passed out by him to the front of the building. A motion for new trial was denied by the trial court, and this ruling was reversed; this court saying: "The confidence of litigants in the verdicts of juries should not be weakened, nor the rule dictated by public policy relaxed, in cases of this character. The probability that a party who intermeddles with the jury while they are deliberating upon their verdict does so for an improper purpose is so great that courts will look with suspicion upon the evidence given in explanation of the act." The court further says: "While it may be that the defendant intended no wrong, and neither did nor said anything to the jurors to influence them in arriving at their verdict, the acts of the defendant were grossly improper. It appears the jury were in charge of a sworn officer, as bailiff, yet the defendant makes no explanation why he did not communicate the request of the judge to the jury through him, instead of going himself to the jury and mingling with the jurors. While the explanation of the defendant of his acts tends to present them in a more favorable light, still the fact remains that the proceedings of the defendant were so irregular as to subject them to a just criticism; and the fact that the jury returned a verdict soon after in his favor was calculated to arouse in the minds of the opposite party a grave suspicion that an improper influence had been exerted upon the jury. To avoid these suspicions, and give confidence to parties in the fairness and impartiality of jury trials, courts guard the jurors from all communications on the part of parties to the action while they are deliberating upon their verdict. This view was forcibly expressed by the Supreme Court of Massachusetts in Knight v. Inhabitants of Freeport, 13 Mass. 218. The court in that case says: "Too

much care and precaution cannot be used to preserve the purity of jury trials. * * * We cannot be too strict in guarding trials by jury from improper influences. This strictness is necessary to give due confidence to parties in the results of their causes; and every one ought to know that for any, even the least, intermeddling with jurors, a verdict will always be set aside."

It is not denied, but is admitted by respondent, that the juror, Elmer Newton, and the plaintiff, A. E. Godfrey, who was successful in the suit, were drinking together at the public bar of a saloon in the evening, during a recess of the court, and that, in direct violation of the order and injunction of the court at a then very recent adjournment, the plaintiff and the juror were engaged in a conversation concerning proceedings in the trial then progressing. Such conduct on the part of jurors and litigants is not conducive to confidence in the integrity of verdicts, and to our minds this case presents stronger reasons for vacating the verdict rendered by this juror than did the facts disclosed in the case of Peterson v. Siglinger, supra.

The judgment and order of the circuit court are reversed, and a new trial ordered.