McGILVERY, Respondent, v. LAWRENCE, Appellant.

(152 N. W. 698.)

(File No. 3677.   Opinion filed May 24, 1915.   Rehearing pending.)

1. **Trial—New Trial—Misconduct of Juror—Visit by, to Room of Plaintiff's Witness.**

   Where a juror, during the trial, went to a room in town occupied by plaintiff's witness, and was found there by the person whose affidavit was used on motion for a new trial, sitting in company with said witness and another person who, with plaintiff, occupied another room in the same house, which third person had previously been a partner of plaintiff in the line of business involved in the suit, and said former partner there treated affiant to whiskey, in presence of the juror, there being present a quart bottle of whiskey about half empty, and the juror was subsequently seen associating with said witness, held, that the facts disclosed by the affidavit vitiated the verdict.

2. **Contracts—Realty Broker's Contract—Right to Commission—Terms of Sale Contract—Cash Payment—Evidence.**

   In an action by a broker for commissions on sale of realty, under a contract requiring a certain cash payment at time of sale, held, the evidence failed to show that a purchaser ready and willing to buy on the terms prescribed by the defendant was procured by the plaintiff.

3. **Brokers—Realty Sale—Right to Commissions—Strict Compliance With Agency Contract, Necessity of.**

   Before a realty broker can recover commissions, he must show that he had found and produced a purchaser able, ready, and willing to purchase on the exact terms prescribed by his principal.

Appeal from Circuit Court, Sully County.   Hon. JOHN F. HUGHES, Judge.

Action by J. W. McGilvery against Henry Lawrence, to recover for commissions on the sale of realty.   From a judgment for plaintiff, defendant appeals.   Reversed and remanded.

*Robert B. Fisk,* for Appellant.

*D. J. O'Keefe,* for Respondent.

(3) Under point three of the opinion, Appellant cited: Gross on Real Estate Brokers, Sec. 102, 132, 133; Fraser v. Wyckoff, 63 N. W. 445; Monson v. Kill, 144 Ill. 255; Crosthwaithe v. Lebus, 146 Ala. 525; Ball v. Doland, 18 S. D. 558; Scott v. Clark, 3 S. D. 486, 54 N. W. 538; Jepson v. Marohn et al., (S. D.) 119 N. W. 989.

McCOY, P. J. This action was instituted by plaintiff to recover from defendant alleged commissions for having obtained, at the instance and request of defendant, a purchaser ready, able, and willing to purchase, upon the terms described by defendant, a certain section of real estate owned by the defendant. There was a verdict and judgment in the amount of $1,944.80 in favor of plaintiff, and defendant appeals. Appellant, among other things, assigns as error the overruling of defendant's motion for a new trial because of misconduct of the jury, and because the evidence is insufficient to justify the verdict.

[1] The question of the alleged misconduct of the jury appears from a certain affidavit of one Holter, a witness for respondent on the trial, presented on the motion for a new trial, from which it appears that one Rupert McCamley was a juror on the trial of this cause; that one McKenzie was a witness for plaintiff, who represented that he was interested with plaintiff in the commissions, the subject-matter of this action; that at the time of the trial the plaintiff, said McKenzie, and one Rogers occupied rooms in the same dwelling house in Onida, where the trial took place; that the plaintiff and Rogers occupied the same room, and McKenzie occupied a room across the hall; that Rogers and plaintiff, prior thereto (stated upon information and belief, and not denied) had been partners in the real estate business; that during said trial affiant visited said room of McKenzie, and found and saw therein said Juror McCamley, together with said Rogers and McKenzie, and that said Rogers then and there treated affiant to whisky; that there was a quart bottle of whisky present about half empty; that affiant subsequently say Juror McCamley associating with said McKenzie. So far as shown by the record, this affidavit was not denied. We are of the view that the facts disclosed by this affidavit are such as will vitiate the verdict. A juror has no business, during a trial on which he is acting as a juror, to be at the place of residence of a party to the action, under the circumstances disclosed. The reasons for this rule are well and strongly stated in Peterson v. Siglinger, 3 S. D. 255, 52 N. W. 1062. What the nature of the conversation between the juror and McKenzie and Rogers may have been is not material, and this

juror and these parties may in fact have been entirely innocent of any wrong; but the circumstances are such as to justly cast suspicion upon the verdict of such a juror, and if such a verdict were to be sustained it would cast just suspicion, in the minds of many, upon the purity of jury trials.

[2] We are also of the view that the evidence was wholly insufficient to sustain any verdict at all for plaintiff, in that the testimony offered on the part of plaintiff conclusively shows that plaintiff did not procure a purchaser ready and willing to purchase on the terms prescribed by defendant. Plaintiff alleged ir his complaint that defendant listed and agreed to sell said lands for $30 per acre net to defendant, one-fourth of said purchase prior to be paid in cash, the remainder to be on deferred payments secured by mortgage; and plaintiff further alleged that on the 11th day of October, 1910, he found and produced a purchaser able, ready, and willing to purchase on said terms prescribed by defendant. The defendant made general denial, except as to matters admitted in said answer. The defendant admitted said listing and agreement with plaintiff, excepting an allegation that the net price to defendant was to be $31.25 per acre, instead of $30, as alleged by plaintiff. The allegation of the complaint to the effect that plaintiff had found and produced a purchaser ready, able, and willing to purchase was covered by the general denial. Defendant also stated in his answer that the said purchaser informed him that he would pay $32.75 per acre for said section of land, and would pay such portion of the purchase price in cash as was satisfactory to defendant; and defendant alleged that he informed said purchaser that he was ready and willing to make to him a deed upon the terms above set forth at the net price of $31.25 per acre net to defendant, and that plaintiff refused to sell said land unless he received a commission of $2.75 per acre, and withdrew said purchaser.

[3] Under this state of the plading it was incumbent upon plaintiff, before he was entitled to a recovery for such commissions, to show that he had found and produced a purchaser able, ready, and willing to purchase on the exact terms prescribed by defendant. Plaintiff had earned no commission until he had found such a purchaser. Ball v. Dolan, 18 S. D. 558, 101

N. W. 719; Jepsen v. Marohn, 22 S. D. 593, 119 N. W. 989, 21 L. R. A. (N. S.) 935. Plaintiff testified that he showed the land to Mr. Holter, the purchaser, and told him of the conditions, and he said the land and price suited him, and that he would take it, and that he (plaintiff) then told defendant that he had obtained his terms on the land as defendant wanted them. Witness McKenzie, who was present at the transaction, also testified substantially the same as plaintiff. It does not appear from the testimony that plaintiff ever informed defendant just what the contract between plaintiff and the purchaser was, other than the general statement that he had sold on the terms that defendant wanted, and that there was to be a cash payment of $5,000. The plaintiff called as a witness Mr. Holter, the proposed purchaser, who in substance testified:

"I told him (plaintiff) that my wife and I had talked it over and decided to take the section; he asked me how much I was willing to pay down as earnest money. I gave him a check for $1,000, and we proceeded to make a contract—a written contract. I dictated what he should put in the contract. The contract provided for the payment of $1,000 earnest money, and there were payments of $1,000 and $2,000 at different times, to make $5,000 by January 1, 1911, and for a mortgage back for the balance of the purchase price, with interest."

We are of the view that $5,000 on January 1, 1911, was not $5,000 cash at time of sale. This testimony of plaintiff conclusively shows that plaintiff did not produce a purchaser ready and willing to pay $5,000 cash, being one-fourth of the purchase price, at time of sale. The sale appears to have been made October 11, 1910. If the cash payment could have been deferred until January 1, 1911, it could have been deferred to January 1, 1912.

The judgment and order appealed from are reversed, and cause remanded.