ERWIN et al, Respondent, v. EAKIN, Appellant.

(192 N. W. 745.)

(File No. 4762. Opinion filed March 14, 1923.)

1. **Brokers—Broker Held Not to Have Procured Purchaser, Ready, Able, and Willing to Buy on Terms Agreed to by Owner.**

   Brokers procuring an offer to buy for $1,000 down, $4,000 when title was perfected, and $2,000 on or before March 1, 1919, did not procure a purchaser ready, able, and willing to buy for $5,000 down and $2,000 in the fall of 1918, as specified in a letter according to which they were directed to sell by the owner.

2. **Brokers—Brokers Submitting New Proposition Which Owner Declined Not Entitled to Commission.**

   Brokers submitting a proposition to buy on terms different from those specified in a prior letter, according to which they were directed to sell by the owner, who then declared the deal off on the ground that his wife refused to sign the deed, held not entitled to a commission, whether such reason was a valid excuse or not; their second letter indicating that they were presenting a new offer which he might accept or decline.

Appeal from Circuit Court, Brown County; HON. FRANK ANDERSON, Judge.

Action by W. I. Erwin and another, co-partners, against Allen C. Eakin. There was judgment for plaintiffs, and defendant appeals therefrom and from an order denying a new trial. Reversed.

*W. F. Corrigan,* of Aberdeen, for Appellant.
*Dwight Campbell,* of Aberdeen, for Respondents.

(1) To point one of the opinion, Appellant cited: Ball v. Dolan, 18 S. D. 558; Lichty v. Daggett, 23 S. D. 380; Watter v. Dancey, 23 S. D. 481; Monson v. Kill (Ill.), 33 N. E. 43; Oliver v. Sattler (Ill.), 84 N. E. 653; Eagle v. Johnson (Ind.), 71 N. E. 272; Strong v. Ross (Ind.), 71 N. E. 918; Duffy v. Hobson, 40 Cal. 240; Darrington v. Powell (Neb.), 72 N. W. 587; Gilbert v. Baxter (Iowa), 32 N. W. 365; Schields v. Harback (Neb.), 46 N. W. 629; Hunt v. Tuttle (Iowa), 110 N. W. 1926; Ballou v. Carter, 30 S. D. 11; Shumway v. Kitzman, 28 S. D. 577; Stoutenburg v. Evans (Iowa), 120 N. W. 59; Stearns v. Jennings (Wis.) 107 N. W. 327; Morrill v. Davis (Neb.) 43 N. W. 1146; O'Brien v. Gilliland (Texas), 23 S. W. 244; Mullenhoff v. Gensler, 15 N. Y. S. 673; Gough v. Coffin (Texas), 120 S. W. 210; Rakes v. Townsend (Iowa), 102 N. W. 499; Schenectady Stove Company v. Holbrook (N. Y.), 4 N. E. 4; Wardell v. Williams, (Mich.), 28 N. W. 79; Erickson v. Wallace (Kan.), 25 Pac. 898.

Respondent cited: Edmundson v. Phenix (Minn.), 187 N. W. 893; Wright v. Eisele (S. D.), 185 N. W. 966; McLaughlin v. Wheeler, 3 S. D. 486, 54 N. W. 538; Huntemer v. Arent, 16 S. D. 456, 93 N. W. 653.

(2) To point two, Appellant cited: Gilbert v. Baxter (Iowa), 31 N. W. 365; Stearns v. ennings (Wis.), 107 N. W. 327; Oliver v. Stattler (Iowa), 84 N. E. 652; Brown v. Phorr, 38 Cal. 550; McGonigal v. Rawley, 63 Atl. 801; Shumway v. Kitzman, 28 S. D. 577; 9 C. J. 563; Sec. 830, Rev. Code 1919.

Respondent cited: 9 C. J. 626; Tilden v. Smith, 24 S. D. 576, 124 N. W. 841; Nesbit v. Giblin (Neb.), 148 N. W. 138; Mitchell v. Brotherhood of L. F. & E. (Neb.), 174 N. W. 422; 9 C. J. 627; Gould v. Banks, 9 Wend. 562; Holbrook v. Wright, 24 Wend. 169; Everett v. Saltus, 15 Wend. 474; Wright v. Reed, 3 T. R. 554; Duffy v. O'Donovan, 46 N. Y. 223; Winter v. Coit, 7 N. Y. 288; Ohio and Miss. Ry. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Redinger v. ones, 68 Kan. 627, 75 Pac. 997; Putnam v. Investment Co. v. King (Kan.), 150 Pac. 559; Weaver v. Snow, 60 Ill. App. 624; Smith v. Keeler, 151 Ill. 518, 38 N. E. 250; Fenn v. Ware (Ga.), 28 S. E. 238; Duclos v. Cunningham,

102 N. Y. 678, 6 N. E. 790; Blood v. Shannon, 29 Cal. 393; Donley v. Porter, 119 Ia. 542, 92 N. W. 574; McDermott v. Mahoney, 139 Ia. 542, 92 N. W. 574; McDermott v. Mahoney, 139 Ia. 292, 115 N. W. 32; Stanton v. Barnes, 72 Kan. 541, 84 Pac. 116.

GATES, J. Action for broker's commission upon the sale of real estate.

Defendant, a resident of Rockford, Ill., was the owner of a 240-acre farm in Brown county. Plaintiffs were his agents at Groton in looking after the farm. On May 19, 1918, they notified defendant of a loss by cyclone. On May 26, 1918, defendant acknowledged the receipt of the letter and said that if he were given to regretting things he would be sorry he had not sold the farm last summer. On May 28, 1918, plaintiffs wrote defendant, asking if $63.60 per acre net to him would buy the farm. On May 30, 1918, plaintiffs wrote defendant telling of taking a prospective purchaser out to neighboring farm priced at $80 per acre. The letter continued:

"While out there I took them over to see your wreck and at the same time said to them that it might be that this farm would be offered for sale, and they wanted to know what the price would be, and I told them I would not recommend the sale of it for less than $80.00 per acre, and the man who made the offer on the other quarter said his brother-in-law wanted to buy up here, if he did and he believed he would take it, if the terms could be arranged upon.

"He said he believed his brother-in-law would pay down about $5,000.00 and perhaps two thousand more in the fall.

"Now this would give you $75.00 per acre net, out of the farm, and the crop and what the loss will amount to would go with the deal, to fix up the buildings.

"I am not recommending that you do this, even if we are able to put it through, but from what you said in your letter a few days ago, I felt you might want to, but before you say what you would be willing to do on this, I want you to do some hard thinking and then say you will be out at a certain time, on a day's notice, when I would wire you. * * *

"Now about selling the farm for $80.00, and netting you $75.00. will say we have to do this, as we have to divide with the man who brings the men here from Nebraska, and you will know

all about what we are getting out of it. Now wire me yes·or no, and I will know you will, or will not be here if notified when the figures are to be made on the house."

Shortly thereafter defendant telegraphed plaintiffs as follows:

"Find impossible to meet you. Decide as for yourself. Sell according last letter. Am writing."

Thereupon plaintiffs wrote to their Nebraska man who brought up a prospective purchaser; and on June 12, 1918, plaintiffs wrote defendant as follows:

"After writing you a week or so ago telling you the proposition I had in mind for the party who was inquiring about your land, I received a message from you saying for me to use my judgment, which I considered was in regard to repairing the buildings on the farm, and in the same message you said sell the farm, which I considered was to sell according to the terms mentioned in my letter to you, then you also said a letter would follow, but as yet it has not been received, so think you overlooked writing me regarding the repairs or the matter of sale.

"The man I had in view for the farm was here and went back to Nebraska yesterday, telling me he would talk it over with his wife and it would be a sale of either your farm or one other, that he felt was about as good a deal, and his final proposition was as follows:

| | |
|---|---:|
| As soon as he decided, which was to be within a few days ..........................................| $ 1,000.00 |
| As soon as title was perfected and shown by abstract.. | 4,000.00 |
| On or before March 1, 1919 ...................... | 2,000.00 |
| In mortgage bearing six per cent for five years........ | 12,200.00 |
| Total amount of $80.00 per acre, 240 acres........ | $19,200.00 |

"This mortgage was to be drawn so that he would be obliged to pay $500.00 each year and the interest, and he would have the privilege of paying as much more as he wished, in even $100.00 payments, or rather $100.00 or any multiple thereof, above the $500.00 payment. The above proposition I agreed he could have, and further than that, he wanted to have the privilege at the end of each six months of making $100.00 or any multiple thereof payment, which I told him I would ask for.

"You understand, of course, that the whole amount of the mortgage would be due at the end of five years.

"He had not just decided when he would want his year to end, but thought perhaps December 1st, and June 1st, of each year.

"Not knowing what you would prefer in the matter I went and saw Mr. Ringger, who has always been my banker, in land deals and he told me he could not at the present time handle your $12,200.00 loan, but thought this fall he could, and said it was a first class loan at $10,000.00 and I know if he can handle that much of it we can get the balance for you, if you want to use the money this fall, unless some thing happens to money conditions. (The letter here refers to repairs on the building and adjustment of the insurance.) * * * If this man buys the place he hardly knows what to do with the house, and if he does not you and I will have to do some corresponding before I would want to go ahead with it, as would hardly know if it was my own proposition.

"If the place is not sold to this man, I might be able to turn it to the man on my place as have been talking to him, in which case he would be able to perhaps pay about $10,000.00 cash, at least, do as well as to payments as the Nebraska man, or something better, as to cash.

"We have agreed that the deferred payments would bear interest from July 1st, and as soon as I hear from him, will wire you to send the abstract, in fact you might send it along anyway, as I can send it back if not able to turn the land, but want it here so can be sure to be ready to close, on your part by July 1st, in order to get the interest started.

"The drafts for the insurance will come in your name, so we will simply call that so much paid on the deal, if he takes the land, and he would pay the difference between that amount and the $5,000.00.

"About our commission, we want to be right and will take, if agreeable to you, $800.00 out of the settlement money, and the $400.00 out of the $2,000.00 to be paid before March 1st. * * *

"Now, Doctor, there is nothing covered in this matter, and if it is not agreeable to you, I want you to relieve yourself. * * *"

On June 14, 1918, plaintiffs wired defendant: "Farm sold one thousand dollars up." And on the same day plaintiffs wrote defendant as follows:

"Just received word that the party had deposited $1,000.00 as a forfeit on the purchase of your land and I wired you at once to that effect, and now ask that you send us the abstract of title, as you have it and we will have it continued to date and send the purchaser to have examined, and later will send you deed to sign to be sent to the bank here to be closed, which we hope to do within a reasonable time. * * *"

On June 18, 1918, plaintiffs received the following telegram from defendants: "Wife refuses to sign deed. No use delaying further. Deal off." After some further correspondence which is unimportant in the view we take of this case, this action was begun on July 25, 1918. A trial by jury was had, and, both sides having moved for a directed verdict, the case was withdrawn from the jury and decided in favor of plaintiffs upon findings of fact and conclusions of law rendered by the court.

Defendant appeals from the judgment and order denying a new trial.

The question in this case is: Did the plaintiffs procure a purchaser ready, able, and willing to take the land upon the terms specified in plaintiffs' letter to defendant dated May 30, 1918? That letter specified payments of $5,000 down and $2,000 in the autumn of 1918, and did not mention deferred payments. The offer of the prospective purchaser communicated to defendant in plaintiffs' letter of June 12, 1918, specified $1,000 down, $4,000 as soon as title was perfected and shown by abstract, and $2,000 on or before March 1, 1919. If we leave out of consideration entirely the matter of deferred payments, and if we should consider the offer of $1,000 down and $4,000 upon the furnishing of abstract showing good title as the equivalent of "$5,000 down," yet it cannot be said that $2,000 to be paid March 1, 1919, is the equivalent of $2,000 to be paid in the autumn of 1918. In McGilvery v. Lawrence, 35 S. D. 443, 152 N. W. 698, this court said:

"We are of the view that $5,000 on January 1, 1911, was not $5,000 cash at time of sale. This testimony of plaintiff conclusively shows that plaintiff did not produce a purchaser ready and

willing to pay $5,000 cash, being one-fourth of the purchase price, at time of sale. The sale appears to have been made October 11, 1910. If the cash payment could have been deferred until January 1, 1911, it could have been deferred to January 1, 1912."

[1, 2] We must, therefore, consistently with that opinion, hold that plaintiffs did not procure a purchaser ready, able, and willing to take the land upon the terms specified in plaintiffs' letter to defendant dated May 30, 1918. Furthermore, a reading of plaintiffs' letter of June 12, 1918, shows that they did not then consider the proposition therein submitted as an acceptance of defendant's previous offer, but rather that they were then putting up to him a new offer which he might accept or decline as he saw fit. He saw fit to decline, and his telegram of June 18th declaring the deal off terminated the matter, regardless of whether the excuse that his wife would not sign the deed was or was not a valid excuse.

The judgment and order appealed from are reversed.

ANDERSON, P. J., not sitting.

Note—Reported in 192 N. W. 745. See American Key-Numbered Digest, (1) Brokers, Key-No. 49(3), 9 C. J. Sec. 85; 4 R. C. L. 303; (2) Brokers, Key-No. 49(3), 9 C. J. Sec. 90.

As to when real estate broker is considered as the procuring cause of sale or exchange affected, see note in 44 L. R. A. 321; on performance of contract, by real estate broker, to find a purchaser or effect an exchange of his principal's property, see note in 44 L. R. A. (N. S.) 593.